IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

LARRY W. LOLLIS                                                          PLAINTIFF

v.                                    CIVIL No. 4:07-cv-4067

SGT. JONATHAN PAGE                                                      DEFENDANT

## MEMORANDUM OPINION

Larry W. Lollis (Plaintiff) filed a *pro se* civil rights action under 42 U.S.C. § 1983 on July

23, 2007 against Defendant Jonathan Page (Defendant). Plaintiff's Complaint was filed *in forma*

*pauperis* (IFP) and certified to proceed. Defendants filed their court-ordered Motion for Summary

Judgment on November 7, 2007 (Doc. 12), which is the issue before the undersigned on consent of

the parties. The parties have consented to the jurisdiction of a magistrate judge to conduct any and

all proceedings in this case, including conducting the trial, ordering the entry of a final judgment,

and conducting all post-judgment proceedings. (Doc. 9). Pursuant to this authority, the Court issues

this Order.

## I. Background

Plaintiff's claims arise from when he was detained in the Hempstead County Detention

Facility. Plaintiff alleges Defendant subjected him to unconstitutional conditions of confinement

by denying him cleaning supplies to clean waste that had overflowed from the toilet in his cell.

Plaintiff further contends Defendant forced him to eat his evening meal in the contaminated cell.

Specifically, Plaintiff claims that on June 24, 2007, the toilet in his cell was "stopped up" at

approximately 4:15 p.m. (Doc. 1, ¶ V). Plaintiff and his cell mate, Doneric Thirdgill, called non-

party Officer Flores in the control booth and told him of the problem. *Id.* Defendant arrived with

a plunger about fifteen (15) minutes later, at 4:30 p.m. *Id.* Plaintiff alleges he was able to unclog the toilet, but that the toilet had overflowed allowing "b.m., paper and urine" on the floor of Plaintiff's cell. *Id.* Plaintiff told Defendant the floor needed cleaning, but was only given a "squeege." *Id.*, (Doc. 18, ¶ 2 (B)). Plaintiff also indicates his cell mate had to use his towel for cleaning. (Doc. 1, ¶ V). Plaintiff asked Defendant to look at the floor before the evening meal was served, but Defendant refused to do so and made Plaintiff eat his evening meal in the contaminated cell. (Doc. 18, ¶ 2). Plaintiff specifically asked to eat on the tables in the day room and was refused by Defendant. (Doc. 1, ¶ V; Doc. 18, ¶ 2). Plaintiff further states he was sick for two or three days, and would ask for an "anti-acid." (Doc. 18, ¶ 3). Two or three weeks later, Plaintiff saw the nurse and was given Zantac. *Id.* Plaintiff believes the reason he was sick was because of the exposure to the waste in his cell. *Id.*

Defendants provide an incident report from Defendant which states that he received a radio call that an inmate's cell was flooded and he got a mop and bucket before going to the cell. (Doc. 13, Ex. 2). When he entered the pod, he saw Plaintiff's cell had evidence of flooding and he opened the cell for the inmates to clean. *Id.* Plaintiff did not assist in the clean up, but went to use the telephone located in the pod. *Id.* Defendant inspected the cell to make sure all of the water was cleaned up. *Id.* Defendant then made Plaintiff end his phone call and come back to the cell for lockdown. *Id.* Plaintiff became upset and stated there was feces on the floor of the cell. *Id.* Defendant felt Plaintiff made this statement to avoid going back into his cell. *Id.* Defendant again inspected the cell and did not find anything Plaintiff stated was on the floor. *Id.*

Doneric Thirdgill, Plaintiff's cell mate, has also provided his version of events. (Doc. 13, Ex. 3). Thirdgill stated that he put a cup in the toilet, intentionally causing it to overflow so that he

and Plaintiff could get out of their cell.  *Id.*  Thridgill asked for a mop to clean the water up and Defendant gave him one.  *Id.*  When Plaintiff returned to the cell, he and Defendant were having words and "cussing each other" about what was on the floor.  *Id.*  Thirdgill had all the water up "but a little" when dinner was served.  *Id.*

## II.  Discussion

Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56 (c).  The Court views the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  *See Adkison v. G.D. Searle & Co.*, 971 F.2d 132, 134 (8th Cir. 1992).  The moving party has the burden of showing the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## A.  Official Capacity Claims

Plaintiff has sued Defendant in his individual and official capacities.  Plaintiff's official capacity claims are tantamount to suing Hempstead County.  Official-capacity liability under 42 U.S.C. § 1983 occurs only when a constitutional injury is caused by "a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978).  Because *Monell* specifically rejected liability based solely on *respondeat superior, id.* at 691, "[a] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." *White v. Holmes,* 21 F.3d 277, 280 (8th Cir.  1994).  Rather, official-capacity liability must be based on deliberate indifference or tacit authorization.  *See id.*

Policy or custom official-capacity liability is imposed by 42 U.S.C. § 1983 only for "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." *Monell,* 436 U.S. at 690-91.

Plaintiff clearly states he is alleging official capacity claims. (Doc. 18, ¶ 1). Plaintiff states the unconstitutional policy of having the inmates on lock down for 23 hours of the day is responsible for his constitutional violations, as well as the policy of having the inmates do their own plumbing. Plaintiff offers no evidence to support that a 23-hour lock down is a policy of Hempstead County, or how such a policy violated his constitutional rights. The same is true for any policy that inmates do their own plumbing. Accordingly, Defendants' Motion for Summary Judgment is **GRANTED** as to Plaintiff's claims against Defendant in his official capacity.

## B.  Individual Capacity Claims

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833 (1998) (citation omitted). In *Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006), the Eighth Circuit held that deliberate indifference is the "appropriate standard of culpability for all claims that prison officials failed to provide pretrial detainees with adequate food, clothing, shelter, medical care and reasonable safety." The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 347

(1981).

"A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004)(citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner." *Revels*, 382 F.3d at 875 (citations and internal quotation marks omitted). Deliberate indifference is established when the plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Revels*, 382 F.3d at 875. The standards against which a court measures prison conditions are "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).

Plaintiff contends he was subjected to unconstitutional conditions of confinement on June 24, 2007 when he was required to remain in his cell for the duration of the evening meal, after the cell overflowed allegedly spilling water, urine, fecal matter, and paper on the floor.

In *Smith v. Copeland*, 87 F.3d 265 (8th Cir. 1996) the Eighth Circuit noted that not every "overflowed toilet in a prison amounts to a constitutional violation." *Id.* at 268. The court noted it had found constitutional violations to exist when inmates were forced to work without protective gear in "a shower of human excrement," and had ordered prisons to provide protective gear and to warn of the dangers of working in AIDS-contaminated waste. *Id.* at 269. It had also found a constitutional violation to exist when "an inmate was forced to endure a cell covered with filth and human waste for two full years." *Id.* The Eighth Circuit noted that "the length of time a prisoner is

-5-

subjected to harsh conditions is a critical factor in our analysis." *Id.* It further instructed that "[c]onditions such as a filthy cell that "may be tolerable for a few days are intolerably cruel for weeks or months." *Id.* In the case before it, viewed in the light most favorable to the plaintiff, the summary judgment materials showed the plaintiff was subjected to a "overflowed toilet in his cell for four days." *Smith*, 87 F.3d at 269. Under the totality of the circumstances, the court held the defendants entitled to judgment as a matter of law on the raw sewage claim. *Id.*

In this case, Plaintiff maintains the toilet overflowed at 4:15 p.m. on June 24, 2007 spilling water, urine, fecal matter, and paper on the floor. (Doc. ¶ 2 (D)). Plaintiff indicates Defendant was notified of the overflow at that time. *Id.* At 4:25 or 4:30 p.m. Defendant gave Plaintiff and his cell mate a plunger and a "squeege." *Id.* Plaintiff states that when Defendant returned it was 7 to 10 minutes before the evening meal was served and there were "gallons" of water on the floor. *Id.* Plaintiff does not indicate that he was forced to sleep in the contaminated cell or eat any other meals there and does not indicate when he was able to clean his cell. There are no records of any grievances being filed regarding this issue or further clean up. Plaintiff further alleges he was ill for two days after the incident. However, Plaintiff filed no medical requests or grievances regarding his complaints of an "upset stomach." He indicates he sought anti-acids two weeks after the incident.

According to defendants, including an affidavit by Plaintiff's cell mate, Thirdgill placed an object in the commode causing the toilet to overflow so that the Plaintiff and he could get out of the cell. (Doc. 13, Ex 3). Defendant responded to the notice that the toilet had overflowed and supplied cleaning materials to Plaintiff and Thirdgill. Plaintiff did not help clean the overflow, but did have words with Defendant regarding returning to his cell.

Under the totality of the circumstances, Plaintiff's allegations do not rise to the level of

-6-

constitutional significance. Taking the facts in the light most favorable to Plaintiff, he was exposed to the overflowed toilet for only a short period of time – the duration of the meal. We find no genuine issues of fact as to whether defendants were deliberately indifferent to the risk of harm to Plaintiff posed by the overflowed toilet.

Plaintiff had limited exposure to the unsanitary condition and does not allege that he suffered any serious health consequences as a result. Under the totality of the circumstances, no genuine issue of material fact exist as to this claim and Summary Judgment is **GRANTED**.

## III.  Conclusion

For the reasons stated above, Defendant's Motion for Summary Judgment is **GRANTED** (Doc.  12) in its entirety.  Plaintiff's Complaint (Doc.  1) should be dismissed with prejudice.  A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**IT IS SO ORDERED** this **27th day of March 2008.**

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
U.S.  MAGISTRATE JUDGE